# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RYDER TRUCK RENTAL, INC.,**
      Plaintiff,

   v.                                                            Case No. 16-C-0437

**NATIONAL FIRE INSURANCE COMPANY
OF HARTFORD,**
      Defendant.

## DECISION AND ORDER

Plaintiff Ryder Truck Rental, Inc. ("Ryder"), commenced this action against the National Fire Insurance Company of Hartford ("National"), alleging that National is required to provide liability coverage to Ryder in connection with a personal-injury suit brought by a third party. National denies that its policy provides coverage to Ryder. Before me now are the parties' cross-motions for summary judgment. *See* Fed. R. Civ. P. 56.

## I. BACKGROUND

In 2005, Ryder entered into a contract with Rockline Industries, LLC, in which Ryder agreed to lease trucks to Rockline. The contract required Rockline to maintain a policy of automobile-liability insurance covering both Rockline and Ryder "as insureds for the ownership, maintenance, use, and operation of each" vehicle that Ryder leased to Rockline. Truck Lease & Serv. Agreement § 9.A & Schd. A § 14, ECF No. 20-1.

Rockline purchased a commercial automobile policy from National. The policy includes a "Designated Insured" endorsement stating that "any person or organization which the named insured is obligated to provide insurance where required by a written

contract or agreement" is an "insured" under the policy, "but only to the extent that person or organization qualifies as an 'insured' under the Who Is An Insured Provision" of the main coverage form. Policy p. 41, ECF No. 21-1. The policy also includes an endorsement entitled "Lessor – Additional Insured and Loss Payee." This policy extends liability coverage under the policy to a lessor of an auto hired or borrowed by Rockline, but only for "'bodily injury' or 'property damage' resulting from the acts or omissions by" Rockline, its employees, or any person operating a leased auto with Rockline's permission. Policy p. 40.

On December 11, 2014, Suvad Hadzic and Selva Hadzic filed a complaint in Wisconsin state court against Ryder.[1] The complaint alleges that Suvad Hadzic "was severely injured when he stepped onto a step attached to the truck known as Spotter 505034 which was negligently repaired by" Ryder. Hadzic Compl. ¶ 8, ECF No. 20-2. The complaint further alleges that Hadzic's injuries occurred while he "was climbing out of his truck and fell due to a defective step," and that Ryder "was negligent with respect to the repairs made to Spotter 50534 and said negligence was the cause of the plaintiff's injuries and property damage resulting from him losing his footing and falling." *Id.* ¶ 9. The complaint also alleges a claim for loss of society and companionship on behalf of Selva Hadzic.

Ryder and National agree that the Spotter truck identified in the complaint was one of the trucks that Ryder leased to Rockline under the 2005 lease agreement. Ryder

---

[1] Ryder later removed the case to the Eastern District of Wisconsin, and that case is pending before me. *See* E.D. Wis. Case No. 15-C-0146.

and National also agree that Hadzic was an employee of Rockline at the time of the accident.

Ryder tendered the Hadzics' suit to Rockline, and Rockline tendered the claim to National. National denied coverage for Ryder and, to date, has not provided Ryder with a defense to the Hadzics' claims.

## II. DISCUSSION

The parties agree that Wisconsin substantive law applies to this case. As the Wisconsin Supreme Court has recognized, "[l]iability insurance policies often contractually obligate an insurer both to defend and to indemnify its insured." *Marks v. Houston Cas. Co.*, 369 Wis. 2d 547, 570 (2016). Generally speaking, when courts refer to an insurer's "duty to defend," they mean the insurer's responsibility to defend the insured from all actions brought against the insured based on alleged facts or circumstances falling within the purview of coverage under the policy, regardless of the suit's validity or invalidity. *Id.* An insurer's duty to indemnify its insured, in contrast, is the insurer's duty to pay all covered claims and judgments against its insured. *Id.*

The principal issue in this case is whether the Hadzics' complaint triggered National's duty to defend Ryder against their suit. Ryder contends that it did and that National breached its duty to defend by failing to accept Ryder's tender of the defense. National, of course, contends that it has no duty to defend Ryder against the Hadzics' suit.

Under Wisconsin law, to determine whether a third party's suit triggers an insurer's duty to defend, a court compares the language of the insurance policy to the third party's complaint. *Marks*, 369 Wis. 2d at 571. If the complaint, liberally construed,

alleges a claim that, if successful, would be covered by the policy, then the insurer has a duty to defend. *Id.* at 571–75. An insurance policy is interpreted based on what a reasonable person in the position of the insured would have understood the policy terms to mean. *Mau v. N. Dakota Ins. Reserve Fund*, 248 Wis. 2d 1031, 1043 (2001). Any ambiguity in the insurance policy is construed against the insurer. *Marks*, 369 Wis. 2d at 574. Policy language is ambiguous where it is susceptible to more than one reasonable interpretation. *Mau*, 248 Wis. 2d at 1042.

The policy provisions relevant to this case appear in the policy's "Business Auto Coverage Form" under "Section II – Liability Coverage" and in two endorsements related to this form. The Liability Coverage section provides in relevant part that National "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Policy p. 20. It also requires National to defend any insured against a suit for covered damages. *Id.* ("We have the right and duty to defend any 'insured' against a 'suit' asking for such damages . . . ."). There is no dispute that the Hadzics' complaint alleges that Mr. Hadzic suffered "bodily injury" caused by an "accident" and "resulting from the ownership, maintenance or use of a covered 'auto.'" The language "to which this insurance applies" means that the general insuring clause is subject to the policy's exclusions, s*ee Reliance Nat. Ins. Co. v. Hatfield*, 228 F.3d 909, 911 (8th Cir. 2000); *see also* Policy p. 21 (stating that "[t]his policy does not apply to any of the following," and then listing exclusions), and National does not contend that the Hadzics' suit falls within any exclusion. The only dispute is over whether Ryder qualifies as an "insured."

4

Section II.A.1 of the policy is entitled "Who Is An Insured." It provides as follows:

> The following are "insureds":
>
> a. You for any covered "auto."
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
>   (1) The owner or anyone else from whom you hire or borrow a covered "auto."
>   This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>
>   (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>
>   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>
>   (4) Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."
>
>   (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.
>
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

The parties agree that Ryder is not an "insured" under the above language. Ryder is not "you," as that term is used in subsection "a" of the Who Is An Insured section, because the policy's preamble defines "you" as "the Named Insured shown in the Declarations," which is Rockline. *See* Policy p. 19. Ryder also does not fall within the scope of subsection "b" under Who Is An Insured, as Ryder was not using the vehicle at the time of the accident. Finally, subsection "c" does not apply because the Hadzics are

5

not seeking to hold Ryder vicariously liable for the conduct of an insured under subsections "a" or "b." Rather, the Hadzics seek to hold Ryder liable for its own negligence in repairing the step.

Although the parties agree that Ryder is not an "insured" under the main coverage form, Ryder contends, and National disputes, that two endorsements to the main coverage form each make Ryder an "insured" for purposes of the Hadzics' suit. One endorsement is entitled "Designated Insured." The schedule printed on this endorsement identifies "any person or organization which the named insured is obligated to provide insurance where required by a written contract or agreement." The endorsement then states that "[e]ach person or organization shown in the Schedule is an 'insured' for Liability Coverage, but only to the extent that person or organization qualifies as an 'insured' under the Who Is An Insured Provision contained in Section II of the Coverage Form." The endorsement also states that it "identifies person(s) or organization(s) who are 'insureds' under the Who Is An Insured Provision of the Coverage Form" but "does not alter coverage provided in the Coverage Form."

The parties agree that Ryder is a "designated insured," in that it is an organization for which Rockline was obligated to provide insurance pursuant to a written contract or agreement. However, they dispute what coverage is available to a designated insured. Ryder contends that its status as a designated insured means that it is entitled to coverage for the Hadzics' suit. National contends that the designated-insured endorsement does not actually change the Who Is An Insured provision and that because Ryder is not an "insured" under the Who Is An Insured provision, the

6

designated-insured endorsement does not grant Ryder any coverage. For the reasons stated below, I agree with National.

The plain language of the designated-insured endorsement does not grant a "designated insured" any coverage that would not exist in the endorsement's absence. Rather, the endorsement provides that the designated insured is an insured "only to the extent that [the designated insured] qualifies as an 'insured' under the Who Is An Insured Provision contained in Section II of the Coverage Form." Moreover, the endorsement specifically states that it "does not alter coverage provided in the Coverage Form," but instead "identifies person(s) or organization(s) who are 'insureds' under the Who Is An Insured Provision of the Coverage Form." In short, the designated-insured endorsement states in no uncertain terms that it does not actually grant any coverage to a designated insured that has not already been granted to the designated insured by other policy provisions.

If the designated-insured endorsement does not grant a designated insured any coverage that does not already exist under the policy, then what is its purpose? I have been unable to find cases or other legal authority discussing this issue. However, it appears that the purpose of the endorsement is to serve as a document that the named insured can show a third party when that third party questions whether it really is covered for vicarious liability under the Who Is An Insured provision. As one insurance-industry publication states:

> One of the significant developments that does not really change anything but still is important is the Designated Insured Endorsement CA 20 48. This endorsement was introduced by ISO [the Insurance Services Office]

7

in 1993 to appease those who not only want to be additional insureds on the commercial auto policies of others, but also want a security blanket of proof; that is, something more than simply confirmation by an insurance certificate.

Donald S. Malecki, *Risk Management—Courts still interpreting the Business Auto Policy*, Rough Notes Magazine, June 2009, *available at* http://www.roughnotes.com/rnmagazine/2009/june09/06p080.htm (last viewed March 31, 2017); *see also* Donald S. Malecki, *ISO's designated insured endorsement intended to alleviate confusion over vicarious liability coverage*, http://www.roughnotes.com/rnmagazine/search/commercial_lines/96_06p26.htm (last viewed March 31, 2017) (noting that the designated-insured endorsement "does not change anything" but rather "merely confirms the protection that already exists for persons or organizations under the policy for their vicarious liability"). Another insurance-industry commentator makes the same point:

> [S]hippers, receivers, and other trucking companies often demand additional insured status. The vicarious liability section of the "Who Is an Insured" section of the policy extends coverage to "anyone liable for the conduct of an insured . . ." Therefore there is no need to identify these parties as additional insureds—the policy already extends coverage to them. Despite this, it is common for these entities to still require additional insured status. Responding to this industry trend, ISO developed the Designated Insured Endorsement. This endorsement affirms that the named party is an insured for liability coverage, but only to the extent that they qualified already under the "Who Is an Insured" provision of the policy. In short this endorsement modifies nothing under the policy, serving only to placate the demands of the entity requiring proof that they are insured under the policy.

*Additional Insureds—Making Sense of a Complicated Issue*, June 15, 2003, http://interstate-insurance.com/news/?p=3006 (last viewed March 31, 2017).

8

Having concluded that the designated-insured endorsement does not make Ryder an "insured" for purposes of the Hadzics' suit, I turn to the second disputed endorsement, which is entitled "Lessor – Additional Insured and Loss Payee." The effect of this endorsement is to expand coverage under the policy with respect to leased autos, and to give the lessor certain rights under the policy, including the right to notice of cancellation of the policy. The relevant part of the coverage provision states as follows:

> A. Coverage
>
> 1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.
>
> 2. For a "leased auto" designated or described in the Schedule, Who Is An Insured is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:
>
>    a. You;
>
>    b. Any of your "employees" or agents; or
>
>    c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

There is no dispute that the Ryder truck involved in Mr. Hadzic's accident qualifies as a "'leased auto' designated or described in the Schedule." However, National contends that Ryder is not an "insured" for purposes of the Hadzics' suit because Mr. Hadzic's "bodily injury" did not "result[] from the acts or omissions by" Rockline, its employees, or anyone operating the truck with Rockline's permission. For the reasons explained

9

below, I disagree and conclude that the language of this endorsement makes Ryder an "insured" that National must defend against the Hadzics' suit.

The Hadzics' complaint alleges that Mr. Hadzic sustained personal injuries when he stepped onto the step of the truck while exiting the cab and fell. Mr. Hadzic's stepping on the step of the truck was an "act." Moreover, National agrees that, at the time of the accident, Mr. Hadzic was an employee of Rockline. Def. Resp. to Pl. Prop. Finding of Fact ¶ 21.[2] Mr. Hadzic's injuries, as alleged in the complaint, thus "resulted from" an act of one of Rockline's employees. Therefore, Ryder is an "insured" for purposes of the Hadzics' suit under § A.2.b of the lessor endorsement.

National argues that Ryder cannot be an "insured" under this reasoning because the Hadzics' complaint does not allege that Mr. Hadzic was negligent or otherwise at fault for his injuries; rather, it alleges that Ryder was negligent in repairing the step. However, while it is true that the Hadzics do not allege that Mr. Hadzic's own negligence or other wrongdoing contributed to his injuries, nothing in the lessor endorsement (or any other part of the policy) states that a lessor is an "insured" for bodily injury resulting from acts or omissions of the named insured's employee only if the employee's act or omission was negligent or otherwise blameworthy. Rather, the endorsement just says "acts or omissions," and the policy does not define these terms at all, much less in a way that incorporates an element of fault. *See also Great West Cas. Co. v. National Cas. Co.,* 53 F.Supp.3d 1154, 1172 (D.N.D. 2014) (interpreting lessor endorsement and

---

[2] I note that the Hadzics' complaint does not expressly allege that Mr. Hadzic was an employee of Rockline at the time of the accident. However, National has not argued that this fact had to be expressly alleged in the complaint in order to trigger its duty to defend.

10

concluding that coverage applies even when act of named insured's employee was not negligent or otherwise blameworthy). Moreover, the lessor endorsement does not limit the lessor's coverage to bodily injury resulting *exclusively* from the employee's act or omission. So although Ryder's negligence was also an alleged cause of the bodily injury, this does not preclude coverage. Finally, I note that nothing in the lessor endorsement suggests that the lessor is covered for acts or omissions of the named insured's employee only if the plaintiff is seeking to hold the lessor vicariously liable for the acts or omissions of the employee. Indeed, the Who Is An Insured provision already covers the lessor (and any anyone else) for vicarious liability, *see* Policy § A.1.c, and thus limiting coverage under the lessor endorsement to vicarious liability would render the coverage provisions of that endorsement superfluous. In short, because the Hadzics' complaint alleges that Mr. Hadzic's injuries "result[ed] from" his own act of stepping on the negligently repaired step, Ryder is entitled to a defense against the Hadzics' suit.

National cites an unpublished decision of the Wisconsin Court of Appeals, in which the court seemingly interpreted the coverage provisions of the lessor endorsement to include an element of fault. *See Ritter v. Penske Trucking Leasing Co., L.P.*, No. 2011AP2285, 2012 WL 6049186 (Wis. Ct. App. Dec. 6, 2012). In that case, the plaintiff was injured while he was unloading a cargo truck in the dark and, for unknown reasons, a stack of totes fell over onto him. The complaint in that case did not identify what caused the totes to fall, but it did allege that the lessor of the truck was negligent in failing to repair a lightswitch in the cargo area of the truck, which resulted in the plaintiff's unloading the truck in the dark. The plaintiff sued the lessor, and then the

11

lessor tendered the defense to the plaintiff's employer's auto insurer. The lessor argued that it was an additional insured under § A.2.b of the lessor endorsement because it was possible that acts or omissions of the named insured's employees caused the totes to fall over. *Id.* at *4. The court rejected this argument, reasoning that because the complaint did not explicitly allege that an act or omission of a named insured's employee caused the totes to fall over, the complaint did not allege a claim that made the lessor an "insured." *Id.*

From the text of the opinion, it is not clear whether the court in *Ritter* read an element of fault into the "acts or omissions" language in the lessor endorsement. Although the court noted that the complaint did not allege any wrongdoing by the named insured, *id.* at *1 & *4, the court never explicitly stated that an allegation of wrongdoing was necessary to trigger coverage. Rather, the court rejected the lessor's claim of coverage based on the lack of any allegation in the complaint as to who committed the act or omission that caused the totes to fall over. *Id.* at *4. The court did not also state that, if the complaint had alleged that a named insured's employee caused the totes to fall over, coverage would exist only if the complaint also alleged that the employee's act or omission was negligent or otherwise wrongful. Thus, *Ritter* is not necessarily inconsistent with my decision here. However, even if it is, that would not matter. Because *Ritter* is an unpublished decision of Wisconsin's intermediate appellate court, I am not bound by it. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630 (7th Cir. 2002). Moreover, the court did not give any reasons for reading an element of fault into the "acts or omissions" language in the lessor endorsement (if in fact it read such an element into that language), and thus the case has no persuasive value. Therefore, to

12

the extent *Ritter* suggests that the lessor endorsement provides coverage to a lessor only if a negligent or otherwise wrongful act of the named insured caused the plaintiff's bodily injury, I do not follow it.

In sum, Ryder is not entitled to coverage under the designated-insured endorsement. However, because the Hadzics' complaint alleges that Mr. Hadzic's injuries resulted from his own act of stepping on the negligently repaired step, Ryder is entitled to coverage as an additional insured under the lessor endorsement. Therefore, in refusing to defend Ryder against the Hadzics' suit, National breached its duty to defend.

The final issue is the scope of relief to award Ryder. The relief Ryder requested in its complaint is a declaratory judgment. And because I have determined that National has a duty to defend Ryder against the Hadzics' suit, I will enter a declaratory judgment to that effect. Under Wisconsin law, because National has breached its duty to defend, it is also liable to Ryder for the costs and attorneys' fees that Ryder incurred to date in defending itself against the Hadzics' suit. *See, e.g., Elliot v. Donahue*, 169 Wis. 2d 310, 318 (1992). Further, National is liable to Ryder for the costs and attorneys' fees that Ryder incurred in establishing its right to coverage, i.e., the costs and attorneys' fees that it incurred in the present action. *Id.* at 322. To date, Ryder has not submitted evidence as to these amounts, and thus I cannot enter a money judgment. Perhaps the parties will be able to stipulate to the amount of costs and fees. If they cannot, I will schedule further proceedings for the purposes of determining the amount of costs and attorneys' fees to which Ryder is entitled.

In addition to the above relief, Ryder requests a declaratory judgment stating that, because National breached its duty to defend, National is also liable for any judgment entered in the Hadzics' suit in excess of National's policy limits. Ryder's request is based on Wisconsin cases holding that, where an insurer has breached its duty to defend, it is liable for all damages that result from its breach of duty, including any judgment that has been entered against the insured while the insured was left to defend itself. *See Maxwell v. Hartford Union High Sch. Dist.*, 341 Wis. 2d 238, 263–64 (2012); *Newhouse v. Citizens' Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 837–39 (1993). However, at this point, Ryder has incurred no liability to the Hadzics, whether in excess of the policy limits or otherwise, as no settlement or judgment has been entered in that case. Indeed, the Hadzics' suit has been informally stayed pending the conclusion of this coverage action. Thus, at this point, National's breach of its duty to defend has not caused Ryder to incur liability in excess of the policy limits. If in the future Ryder is able to show some causal connection between National's breach of its duty to defend and Ryder's liability to the Hadzics in excess of National's policy limits, then perhaps National will be liable for the full amount of Ryder's liability to the Hadzics, without regard to its policy limits. But at present, I have no grounds for declaring that National will ultimately be liable for any judgment in excess of the policy limits.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 17) is **GRANTED** to the extent that the court will enter a declaratory judgment stating that National has breached its duty to defend Ryder against the Hadzics' suit and is liable for the costs and attorneys' fees that Ryder has incurred in

14

defending against the Hadzics' suit and in establishing coverage in this action. In all other respects, the plaintiff's motion is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (ECF No. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on Wednesday, April 26th at 11:15 a.m. for the purpose of determining whether further proceedings are necessary to establish the amount of costs and attorneys' fees to which Ryder is entitled under this order. The court encourages the parties to discuss this issue in advance of the conference and attempt to arrive at a stipulation as to the amount of such costs and attorneys' fees.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2017.

       s/Lynn Adelman_____
       LYNN ADELMAN
       United States District Judge

15

Case 2:16-cv-00437-LA   Filed 03/31/17   Page 15 of 15   Document 31